[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15604
Non-Argument Calendar
_____

D.C. Docket Nos. 8:11-cv-02649-EAK; 8:08-bk-14131-CED

In Re: NORTHLAKE FOODS, INC.,
         a.k.a. North Lake Foods, Inc.,

                                    Debtor.
_____

DAVID H. CRUMPTON,

                                                      Plaintiff - Appellant,

                                versus

A. DOUGLAS MCGARRITY,

                                                      Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 16, 2013)

Before TJOFLAT, MARCUS, and WILSON, Circuit Judges.

PER CURIAM:

Northlake Foods, Inc. ("Northlake") is a Georgia corporation that owned approximately 150 Waffle House restaurants in Georgia, Florida, and Virginia. On March 1, 1991, A. Douglas McGarrity, a shareholder of Northlake, executed a Shareholders Agreement. Section 5.01 of the agreement contained the following provision:

> If the Corporation's income ever becomes taxable to the Shareholders, rather than to the Corporation, the Corporation shall pay a dividend at least annually in an amount and at a time sufficient for each Shareholder to pay out of the dividend all income tax, state and federal, attributable to that portion of the Corporation's income included in such Shareholder's income in the year preceding the year of payment of the dividend.

Record, No. 1-5, at 16.[1]

In 2005, Northlake designated itself an S corporation. Accordingly, its shareholders were responsible for paying the taxes owed on Northlake's income. The amount of McGarrity's personal income tax attributable to his share of Northlake's 2005 taxable income was $94,429.00. In 2006, citing § 5.01 of the Shareholders Agreement, the board of directors authorized a dividend for McGarrity and made a cash payment to him for $94,429.00 ("2006 Transfer").

---

[1] The Shareholders Agreement was attached as an exhibit to the complaint.

On September 15, 2008, Northlake filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida.  On January 28, 2009, the Bankruptcy Court appointed David Crumpton as bankruptcy trustee for Northlake.  On August 3, 2010, Crumpton filed a complaint in the Bankruptcy Court, claiming (1) that the 2006 Transfer was a fraudulent transfer subject to avoidance and recovery by Crumpton under 11 U.S.C. §§ 544, 548, 550, and 551 and the Georgia Uniform Fraudulent Transfer Act, § 18-2-70 et seq. and (2) seeking disallowance and equitable subordination of McGarrity's claims brought in Northlake's bankruptcy under 11 U.S.C. §§ 502(d) and 510(c).  McGarrity moved for judgment on the pleadings.

The Bankruptcy Court granted the motion, ruling that the complaint reflected that Northlake received reasonably equivalent value for the 2006 Transfer.  The court reached this conclusion on two grounds: first, it determined that the 2006 Transfer satisfied an antecedent debt created by the Shareholders Agreement, see 11 U.S.C. § 548(d)(2)(A); second, the court determined that Northlake received reasonably equivalent value for the 2006 Transfer "by virtue of the Debtor's Subchapter S election for federal income tax purposes."  Record, No. 1-12, at 3.  In an order issued on February 9, 2011, the court dismissed the complaint without prejudice.  Crumpton filed an amended complaint; it alleged that the 2006 Transfer constituted an illegal dividend under Georgia law, O.C.G.A.

3

§ 14-2-640(c) and again sought disallowance and equitable subordination of McGarrity's claims under 11 U.S.C. §§ 502(d) and 510(c).  McGarrity moved the court to dismiss.  In an order issued on September 9, 2011, the court granted the motion, ruling that O.C.G.A. § 14-2-640 only applies to directors, and McGarrity was not a Northlake director.

Crumpton appealed the Bankruptcy Court's February 9, 2011, order and September 9, 2011, order to the United States District Court for the Middle District of Florida.  The District Court affirmed the February 9, 2011, order, holding that the 2006 Transfer satisfied an antecedent debt created by the Shareholders Agreement. The District Court also affirmed the September 9, 2011, order, holding that Georgia's illegal dividend statute could not be applied to Stephens because he was not a Northlake director.[2]

Crumpton now appeals the District Court's judgment.

## II.

We review legal determinations made by either the bankruptcy court or the district court de novo.  In re JLJ Inc., 988 F.2d 1112, 1116 (11th Cir. 1993).  We review the bankruptcy court's findings of fact for clear error.  Id.  When reviewing a ruling on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), we accept as true all allegations in the complaint and construe

---

[2] Crumpton does not contest this ruling in the instant appeal.

4

them in the light most favorable to the nonmoving party.  Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).  Because there are no findings of fact to be made from a judgment on the pleadings, we review the legal significance accorded to the facts de novo.  Elston v. Talladega Cnty. Bd. of Educ., 997 F.2d 1394, 1405 (11th Cir. 1993).

A fraudulent transfer occurs when (1) a debtor was insolvent on the date that the transfer was made or became insolvent as a result of the transfer; (2) the debtor received less than a reasonably equivalent value in exchange for the transfer; and (3) the transfer was made on or within two years before the date the debtor filed the petition for bankruptcy.  See 11 U.S.C. § 548(a)(1).  The only question before us is whether the District Court erred when it ruled that the 2006 Transfer was made in exchange for reasonably equivalent value.

A debtor has not made a fraudulent transfer if the transfer confers an economic benefit on the debtor.  In re Rodriguez, 895 F.2d 725, 727 (11th Cir. 1990).  The complaint shows that the Shareholders Agreement provides Northlake with valuable benefits by virtue of its S-corporation election.  We hold that these benefits constitute a reasonably equivalent exchange for the 2006 Transfer and affirm on that basis.[3]

---

[3]  We therefore do not address whether the 2006 Transfer satisfied an antecedent debt. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir.2010) ("This court may affirm a decision of the district court on any ground supported by the record.").

5

Taking the allegations in the complaint as true, it is clear that Northlake received valuable benefits under the Shareholders Agreement in exchange for the 2006 Transfer. The exchange contemplated by the agreement is simple enough: McGarrity agreed to pay his share of Northlake's taxes if it ever decided to be treated as an S corporation. In exchange, Northlake would reimburse McGarrity the following year for the tax liability he incurred that was attributable to Northlake's income. This agreement benefitted Northlake because it enabled the company to shift to S-corporation status whenever it determined it was advantageous to do so. When Northlake elected this status, it enjoyed the added benefit of freeing up cash that otherwise would have been dedicated to paying its tax liability—though it would have to reimburse its shareholders the following year for taking on this liability. Thus, the agreement provided Northlake with two valuable benefits: flexibility and time.

The facts in the complaint and its exhibits are sufficient to conclude that this was an exchange of reasonably equivalent value. Though the complaint alleges that no consideration was given for the 2006 Transfer, no additional facts are alleged describing the lack or inadequacy of the consideration. Moreover, this bald allegation is plainly contradicted by the Shareholders Agreement attached to the complaint. We therefore afford it no weight. See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1205–06 (11th Cir. 2007) ("Our duty to accept the facts in the

6

complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

The concept of reasonably equivalent value does not require a dollar-for-dollar transaction.  In re Advanced Telecomm. Network, Inc., 490 F.3d 1325, 1336 (11th Cir. 2007).  Because the complaint contains no allegations indicating why these benefits do not constitute a reasonably equivalent exchange for the 2006 Transfer, we have no grounds to conclude they do not.  Accordingly, the District Court's judgment is

AFFIRMED.