[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14645
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-23293-UU

MYRNA LOPEZ,

                                        Plaintiff - Appellant,

versus

CITY OF WEST MIAMI,

                                        Defendant – Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 17, 2016)

Before WILLIAM PRYOR, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Myrna Lopez appeals the district court's grant of summary judgment in favor of her former employer, the City of West Miami, on her claims under the Family and Medical Leave Act, 29 U.S.C. § 2611, *et seq.*, as well as the district court's denial of her motion for reconsideration.  After review of the parties' briefs and the record, we affirm.

## I

We review a district court's grant or denial of a motion for summary judgment *de novo*, and an order denying a motion for reconsideration for abuse of discretion.  *See Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002); *Equity Inv. Partners, LP v. Lenz*, 594 F.3d 1338, 1342 (11th Cir. 2010).  A district court abuses its discretion if it makes a clear error of judgment or applies an incorrect legal standard.  *See Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159 (11th Cir. 2004).

## II

The FMLA grants eligible employees the right to "12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  The FMLA "creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, . . . and retaliation claims, in

2

which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Strickland v. Water Works and Sewer Board*, 239 F.3d 1199, 1206 (11th Cir. 2001) (citations omitted).

"To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Id.* at 1206–07 (citations omitted). "A prima facie case of retaliation under the FMLA," on the other hand, "requires a showing that (1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse employment action, and (3) there is a causal connection between the two." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010) (citation omitted).

## III

Because we write for the parties, we assume their familiarity with the underlying facts and recite only what is necessary to explain our decision.

## A

For the past twenty years, Ms. Lopez, a former police sergeant with the City, has suffered from a permanent medical condition known as severe endometriosis. Ms. Lopez's suit against the City initially involved gender discrimination and retaliation claims under Title VII (Counts I and IV), and discrimination and retaliation claims under the Americans with Disability Act (Counts II and V).

3

These claims were dismissed without prejudice by the district court as a Rule 11 sanction against Ms. Lopez for misrepresenting that she had exhausted her administrative remedies with the EEOC. *See* D.E. 110 at 1–11. Ms. Lopez does not appeal this dismissal.

In the only remaining claim (Count III), Ms. Lopez alleged that the City interfered with, restrained, or denied her the right to exercise (or attempt to exercise) her FMLA rights. And although not pled as a separate claim, Ms. Lopez also alleged that the City discriminated against her, and ultimately discharged her, for exercising her FMLA rights. The district court construed that allegation as an FMLA retaliation claim. *See* D.E. 110 at 18.

## B

After dismissing Ms. Lopez's Title VII and ADA claims, the district court granted the City's motion for summary judgment as to Ms. Lopez's FMLA claims.

The district court rejected the City's first argument—that Ms. Lopez did not provide adequate notice of her need to take FMLA leave. The district court concluded that Ms. Lopez had not given proper notice in August of 2014 by her filing of a grievance and a doctor's note, because neither indicated the need, timing, or duration of the FMLA leave Ms. Lopez might need. *See* D.E. 110 at 16. Nonetheless, the district court found Ms. Lopez provided sufficient notice in her WH 380-E Certification, which she submitted to the City Manager in October of

2014 and which specified that she needed one to two days of medical leave per month. *See id.* In spite of finding adequate notice, however, the district court concluded the City was entitled to summary judgment.

First, as to the FMLA interference claim, the district court found no evidence that Ms. Lopez was denied a benefit to which she was entitled under the FMLA because, seven days after she submitted her WH 380-E Certification, she was placed on paid administrative leave—"which [was] more generous than FMLA leave, which is unpaid"—pending the resolution of an internal affairs investigation which began in July of 2014. *Id.* at 17. The district court also ruled that Ms. Lopez had not shown that her termination was an interference with her FMLA rights because "the undisputed evidence show[ed] that the internal affairs investigation ultimately leading to [Ms. Lopez's] termination began long before she ever requested FMLA leave," and Ms. Lopez was ultimately terminated due to the internal affairs investigation, and not because of her FMLA request. *Id.*

Second, as to the FMLA retaliation claim, the district court held that Ms. Lopez did not provide sufficient evidence of a causal connection between her request for FMLA leave and her termination. The district court found a lack of temporal proximity between her request for leave in October of 2014, and her termination in January of 2015. *See id.* at 18. In addition, the district court concluded that, even if there was temporal proximity, Ms. Lopez "fail[ed] to show

5

any evidence that Chief [of Police Nelson] Andreu, the person who terminated her employment, was aware of her [WH 380-E] Certification of Health Care Provider, which was submitted to the City Manager." *Id.* at 19.

The district court entered final judgment on the same day it granted summary judgment for the City.  *See* D.E. 111.  But because Ms. Lopez did not have notice that the district court would be deciding her FMLA retaliation claim on the basis of causation, the court gave her an opportunity to submit a motion for reconsideration on that issue.  *See* D.E. 110 at 19 n.9.  In response, Ms. Lopez submitted a nine-page brief with ten exhibits.  *See* D.E. 113.  For reasons we discuss in detail below, the district court held that its previous order granting summary judgment to the City would not be disturbed and denied Ms. Lopez's motion for reconsideration.

## IV

Ms. Lopez raises four arguments on appeal.  We address each one separately.

## A

Ms. Lopez contends that the district court erred by failing to recognize that the City violated the FMLA when Ms. Lopez took intermittent leave on June 30, 2014.  Ms. Lopez argues that she informed Chief Andreu of that leave on July 2, 2014, and within hours of this notification, Captain Carlos Avila began an internal

affairs investigation against Ms. Lopez which "was orchestrated because [Captain] Avila and [Chief] Andreu, and probably [City Manager Yolanda] Aguilar, wanted [Ms.] Lopez out of the department but she refused to quit."  Br. for Appellant at 16.  Ms. Lopez also argues the district court abused its discretion by determining that she was amending her FMLA claim through her motion for reconsideration. *See id.* at 27.

Based on our review of the proceedings below, the district court was correct in concluding that Ms. Lopez was improperly attempting to amend her complaint when she moved for reconsideration.  The motion for reconsideration was the first time Ms. Lopez relied on the June 30, 2014, request for leave date.  It was also the first time Ms. Lopez argued she was entitled to intermittent FMLA leave and that the internal affairs investigation was a retaliatory act initiated against her in response to her request for such leave.  Prior to her motion for reconsideration, Ms. Lopez had consistently argued that she first requested FMLA leave in August of 2014, and it was the City's delay in processing that request, as well as her ultimate termination in January of 2015, that formed the factual basis for her interference and retaliation claims.

As background, Ms. Lopez's initial *pro se* complaint did not include an FMLA claim.  In her amended complaint, filed by counsel, Ms. Lopez alleged simply that she "requested family leave time based upon her medical condition,"

7

the City "failed and refused to respond to her request," and that "[f]ailure to timely respond . . . constitute[d] a denial of her request, and a violation of the FMLA." D.E. 30 at ¶¶ 31–32.

The second amended complaint contained a section titled "facts specific to Lopez'[s] FMLA claim" and contained more detailed allegations. D.E. 45 at 9. Ms. Lopez alleged that in August of 2014 she received written counseling for taking sick leave. She filed a grievance and met with Chief Andreu and Captain Avila on August 20, 2014, "at which time she provided them with a letter from her doctor . . . which stated that she suffered from chronic pain syndrome which required her to occasionally miss work, work less hours and to avoid prolonged sitting positions." *Id.* at ¶ 28. She explained that "[a]lthough [she] asked the Chief for medical leave at that time, he did not acknowledge her request." *Id.*

Next, Ms. Lopez alleged that on August 28, 2014, she met with City Manager Aguilar and "explained to [him] the need to take a medical leave of absence under the FMLA." *Id.* at ¶ 29. The City Manager told Ms. Lopez that she had to make a formal request for FMLA leave on forms provided by the United States Department of Labor. *See id.* According to Ms. Lopez, the City interfered with her request for FMLA leave when it "kept putting off [the] meeting" to provide her with the FMLA request forms and by requesting a second opinion as to Ms. Lopez's medical condition from a doctor of their choice. *See id.* at ¶¶ 31, 33.

8

"To Lopez'[s] knowledge, the City never even bothered to obtain a copy of their chosen doctor's reports in a timely manner." *Id.* at ¶ 35.[1]

When the City moved for summary judgment on the FMLA interference claim, Ms. Lopez responded in two paragraphs. Consistent with her complaint, she argued that her "FMLA requested [sic] started in early August 2014" and "[i]nstead of dealing with it the City attempted to discipline Lopez for it." D.E. 92 at 10. Ms. Lopez argued that she met with the City Manager on August 28, 2014, and provided the City Manager with her doctor's letter and requested FMLA leave. *See id.* In response, the City Manager "did [his] part" and "continually stalled Lopez'[s] FMLA request until she was terminated, and then denied it as a moot." *Id.* at 11. "It is Lopez'[s] position that doing **nothing** is doing something—it is denying her request for FMLA leave." *Id.*

Therefore, when the district court was presented with Ms. Lopez's motion for reconsideration—propounding the argument that Ms. Lopez was entitled to intermittent FMLA-protected leave in the summer of 2014, and that her June 30, 2014 leave request led to an internal affairs investigation being commenced against her just hours later—it concluded that the factual basis she presented was "entirely

---

[1] It is undisputed that Ms. Lopez formally requested the forms from the City Manager on September 4, 2014, obtained the FMLA forms from the City on September 19, 2014, and submitted the completed forms (the WH 380-E Certification) along with a note from her doctor on October 3, 2014. *See* D.E. 82 (Defendant's Statement of Undisputed Material Facts in Support of Summary Judgment) at ¶¶ 8, 11, 12; D.E. 93 at 2 ("Lopez does not dispute the City's Facts.").

new" and was an improper attempt to "reformulate her FMLA retaliation claim and test an alternative theory" in response to the district court's order on summary judgment. D.E. 130 at 2 & 3. The district court declined to "entertain [Ms. Lopez's] motion for reconsideration based on a completely new theory." *Id.* at 5.

On this record, the district court did not abuse its discretion in denying Ms. Lopez's motion for reconsideration. A "motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment. This prohibition includes new arguments that were previously available, but not pressed." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (internal quotation marks and citations omitted). That is what Ms. Lopez attempted to do here.

We are also not persuaded by Ms. Lopez's argument that she "did not inject any new facts into the case" because "the events of June 30–July 2, 2014 were alleged, *albeit*, under the wrong section of the complaint." Br. for Appellant at 28. Notably, Ms. Lopez has not provided any paragraph citations in her complaint to support this argument. At summary judgment, the City "properly responded to, and the district court properly relied on, [Ms. Lopez's] [FMLA] count as it was pled." *Lightfoot v. Henry County Sch. Dist.*, 771 F.3d 764, 779 (11th Cir. 2014) (holding that the district court did not abuse its discretion by declining to construe plaintiff's ADA retaliation claim as being based on different facts than the ones

10

actually pled in her ADA count). *See also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint.").

We also reject Ms. Lopez's argument that, assuming there was an attempt to amend the complaint, leave should have been freely given because "this was summary judgment proceedings and not trial." Br. for Appellant at 28. "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment," *Gilmour*, 382 F.3d at 1315, let alone in a motion for reconsideration after summary judgment has been granted.

### B

All of Ms. Lopez's remaining arguments on appeal stem from her reformulated FMLA retaliation claim and the district court's denial of her motion for reconsideration. They fail to persuade for the same reasons previously discussed.

### 1

Ms. Lopez argues that the district court "erred by limiting [her] showing that [Chief] Andreu was aware that she was making an FMLA claim to proof that he was aware that [she] submitted a formal medical certification [the WH 380-E] to [City Manager] Aguilar." Br. of Appellant at 25. She asserts that, assuming Chief

11

Andreu was not aware that Ms. Lopez submitted this particular FMLA request form to the City Manager, there was "ample other evidence that [Chief] Andreu knew that [Ms.] Lopez was pursuing FMLA relief," including that "she told him so in lay terms" at their July 2, 2015 meeting and also because he "knew of [Ms.] Lopez's condition for years." *Id.*

Ms. Lopez's argument is not entirely clear. Chief Andreu's knowledge of Ms. Lopez's FMLA request was relevant to the district court's ruling on the retaliation claim. If Ms. Lopez is claiming—as she did in her motion for reconsideration—that she exercised FMLA leave for her medical condition on June 30, 2014, and Chief Andreu knew of this as of July 2, 2014, and retaliated against her by initiating the internal affairs investigation and, ultimately, terminating her, this argument fails for the same reasons explained above.

Alternatively, Ms. Lopez may be arguing that Chief Andreu (and the City) knew of her medical condition for years and that she qualified for intermittent FMLA leave all along. Such an argument may be more appropriately directed toward an FMLA interference claim, as opposed to a retaliation claim. *See Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005) ("An employee is not required to assert expressly her right to take leave under the FMLA." (citing 29 C.F.R. §§ 825.302(c), 825.303(b))); *Strickland*, 239 F.3d at 1209 ("Once an employee taking unforeseeable leave informs his employer that potentially FMLA-

12

qualifying leave is needed, the regulations place on the employer the burden of ascertaining whether the employee's absence actually qualifies for FMLA protection.") (internal quotations and citations omitted).  It does little to rebut the district court's finding that there was a lack of temporal proximity between her FMLA request and her termination.  It is also a theory for relief under the FMLA that was not timely and properly raised in district court, as already discussed.

## 2

Next, Ms. Lopez argues that the district court "erred by refusing to apply 'negative inferences' arising from the City's spoliation of evidence to her FMLA case and ignoring [Chief] Andreu's lack of credibility."  Br. for Appellant at 26.

In the district court, Ms. Lopez filed a motion for discovery sanctions against the City.  She claimed that the City delayed in producing certain patrol reports and, when these reports were eventually produced to her, some entries had been deleted and the rest were presented in such a convoluted manner as to make it near impossible for her to make sense of them.  *See id.*  In her motion, Ms. Lopez argued that these reports were necessary for her to prove her Title VII claim and show that the City terminated her for having variances in her reported start and stop times, which was the same conduct engaged in by her male counterparts.  *See* D.E. 72.  She requested an adverse inference that the reports "would show as a matter of fact that [Sergeant] Valencia [a purported male comparator] committed

13

the same violations as [Ms.] Lopez during the same time period; and he received no discipline for it; and a finding that the City deliberately and intentionally tamped [sic] with the Sky Patrol Reports." *Id.* at 18. The district court denied Ms. Lopez's motion for sanctions as moot in light of its dismissal of her Title VII claim. *See* D.E. 110 at 20.

Ms. Lopez raises the argument she first raised in her motion for reconsideration. She argues that the negative inference from the tampered reports is not solely limited to her Title VII claim, but is also relevant to her FMLA claim because it bears on Chief Andreu's credibility if he "testifies that he doesn't really recall that Lopez had a serious medical condition, or whether she discussed it with him on July 2, 2014." D.E. 113 at 8. Again, this argument stems from Ms. Lopez's belated attempt to reformulate her FMLA retaliation claim and argue that she first requested leave on June 30, 2014, and fails for the same reasons discussed above.

## V

We affirm the district court's grant of summary judgment for the City on Ms. Lopez's FMLA claims, as well as the district court's denial of Ms. Lopez's motion for reconsideration.

**AFFIRMED.**

14